David H. Krieger, Esq.
Nevada Bar No. 9086
KRIEGER LAW GROUP LLC
500 N. Rainbow Blvd., Suite 300
Las Vegas, NV 89107
Phone: (702) 848-3855
Email: dkrieger@kriegerlawgroup.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HUGO BARRAGAN, <br><br> PLAINTIFF, <br><br> v. <br><br> CLARITY SERVICES, INC <br><br> DEFENDANT. | Civil Action No.: <br><br> **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** <br><br> **JURY TRIAL DEMANDED** |

1

**JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 946 (D. Nev. 2011).

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C.§§ 1681, et seq.

3. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendant is subject to personal jurisdiction in the County of Clark, State of Nevada as it conducts business there. Venue is also proper because the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

**PARTIES**

4. Plaintiff Hugo Barragan is a natural person residing in the County of Clark, State of Nevada.

5. Defendant Clarity Services, Inc. ("Clarity") is a foreign corporation doing business in Nevada. Clarity is a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(f).

6. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

/ / /

**FACTUAL ALLEGATIONS**

*Statutory Background*

7. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

8. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

9. As part of its affirmative obligations to ensure the accuracy of its reported data, consumer reporting agencies are required to adopt "reasonable procedures designed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). This includes an affirmative obligation to only

3

accept and report information from third parties whose data is reliable.

10. The FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).[1] Disclosure of complete information in a consumer's file permits the consumer to determine whether any information is inaccurate, as well as protect a consumer's privacy. *See* 15 U.S.C. § 1681a(d)(2)(A)(iii); 1681b(c).

11. Specifically, and pursuant to Section 1681g, when a CRA discloses to a consumer that consumer's file, the disclosure must "clearly and accurately" reflect all the information in that consumer's file at the time of the disclosure. 15 U.S.C. § 1681g(a)(1); *Ramirez v. TransUnion LLC*, --- F.3d ----, 2020 WL 946973, at *15-16 (9th Cir. Feb. 27, 2020). Information which is either unclear or inaccurate violates the statute and creates liability. *See Leoni v. Experian Information Solutions, Inc.*, No. 17-cv-1408-RFB-VCF, 2019 WL 4866118, at *4 (D. Nev. Sept. 26, 2019).

12. The Ninth Circuit evaluates the clarity and accuracy of a disclosure by recourse to how an average consumer would view them. *See Shaw v. Experian Information Solutions, Inc.*, 891 F.3d 749 (9th Cir. 2018). "File," is explicitly defined in the FCRA, and when applied to consumers, means, "all of the information on that consumer and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). The

---

[1] This requirement is subject to exceptions in Sections 1681h(a)(1) and 1681g(a)(1)(A)-(B), which are not relevant here.

Ninth Circuit has defined "file" as all information the CRA maintains on a consumer that has been, or might be, included in a consumer report on that consumer. *See Shaw*, 891 F.3d at 759-60.

13. Clear and accurate disclosure also furthers the FCRA's privacy policies, by providing a consumer the opportunity to self-police their reported information for fraud, as well as to determine whether that consumer should exercise their rights to refuse to permit a company to share data between its affiliate companies, as well as to opt out of receipt of promotional mailings. *See* 15 U.S.C. §§ 1681a(d)(2)(A)(iii); 1681b(c).

14. Finally, CRAs are required to establish reasonable procedures to ensure the maximum possible accuracy of consumer reports it prepares. 15 U.S.C. § 1681e(b). In the Ninth Circuit, it is not necessary for a report to be actually published to a third party to trigger Section[2] 1681e(b) liability. *See Ramirez*, 2020 WL 946973, at *9-13.

***Clarity violated 15 U.S.C. §§ 1681g(a)(2), 1681e(b) and 1681i(a) when it employed unreasonable procedures designed to ensure it accurately reported that Plaintiff was subject to OFAC Alert***

15. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

16. On or about August 26, 2019, Plaintiff sent a written request by certified mail to Clarity, requesting his 1681g(a) consumer disclosure ("Disclosure"). He identified himself by name, social security number, address, and birthdate. As proof, he also included photo copies of his drivers license and social security card.

---

[2] Unless otherwise noted, herein, all references to "Section," are to the sections or subsections of United States Code Chapter 15.

17. On or about September 6, 2019, pursuant to Plaintiff's request, Clarity generated and sent Plaintiff all of his Section 1681g disclosures, identified by Ref. # 9KRGMVX5. Among other things, the Disclosure indicated that Plaintiff was a match to a name appearing on the list of Specially Designated Nationals ("SDNs") appearing on the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC").

18. However, Clarity did not identify the source of the information upon which Clarity based its match to the OFAC SDN list, thus violating Section 1681g(a)(2).

19. According to the Disclosure, Clarity identified Plaintiff with an OFAC Score of 30 ("OFAC Alert"). The Disclosure explained that the OFAC Score ranges from 0-100; the lower the score the better.

20. Individuals appearing on the OFAC SDN list are prohibited from transacting business in the United States for national security reasons. *Ramirez*, 2020 WL 946973 at *2.

21. Upon information and belief, in producing these purported matches to the OFAC SDN list, Clarity employs software that conducts basic first-and-last name searches—despite having the capability to conduct more accurate searches based on additional identifiers.

22. In the alternative, upon information and belief, Clarity coordinates with a third-party vendor whose software and or database conducts the "name-only" search against a consumer's first and last name against the names on the OFAC SDN list.

23. Upon information and belief, Clarity then obtains that information and rereports it on consumer reports to third parties.

24. Pursuant to Section 1681i(a)(1), on or about December 10, 2019, in a letter sent certified mail to Clarity, Plaintiff disputed the accuracy of Clarity's reporting of the OFAC Score.

6

In that letter, Plaintiff stated plainly that he should have a score no greater than zero as follows:

> First, my consumer file shows you are reporting under "Validation" an OFAC Score of 30. According to your credit report, the score ranges from 0 - 100 and the lower the score the better. I would like to know what you have based this score on and why I have any score above 0. It is my understanding this score can relate to a terrorist watch list among other nefarious things and I have done nothing I am aware to deserve to have a score other than 0 associated with me or in my consumer file with your company. This is very disturbing to me and it makes no sense to me where this OFAC score came from. Please send me a description of how/where you obtained this score and why I am score of greater than 0, since I dispute that I should have any score indicating I am on an OFAC watch-list.

25. Section 1681i(a)(2) requires that when a CRA, like Clarity, receives notice of a consumer's dispute, the CRA must then notify the furnisher of that information that its reporting is subject to dispute. Upon information and belief, Clarity failed to send notice of Plaintiff's dispute to any party that furnished the information resulting in Clarity placing the OFAC Alert on Plaintiff's file, thus violating Section 1681i(a)(2).

26. Pursuant to Section 1681i(a)(6), on or about December 17, 2019, Clarity generated and sent Plaintiff a notice of the results of its reinvestigation. In its notice of results, Clarity explained that it had confirmed the information in dispute was "accurate and complete," and would therefore remain on his file.

27. Also on December 17, 2019, Clarity also sent Plaintiff a letter explaining that Plaintiff's name "matche[d] a name on the U.S. Department of Treasury's Office of Foreign Assets Control [SDN List]." Clarity did not list the name or names on the SDN List that it was referring to in the letter.

28. Clarity's letter also advised that Plaintiff could view the list at http://www.treas.gov/ofac. Plaintiff then spent about an hour following Clarity's advice.

29. When he clicked on that link, Plaintiff then was able to identify two lists that only added to his confusion.

30. The first list was the most current version of the SDN List. Available at https://www.treasury.gov/ofac/downloads/sdnlist.pdf. Although it featured fifteen entries that shared Plaintiff's last name, none of those entries featured Plaintiff's first name (Hugo), or his middle name (Castro).

31. The second list identified all changes to the SDN List in 2019. Available at https://www.treasury.gov/ofac/downloads/sdnnew19.pdf. Plaintiff reviewed this list and could not identify a single entry that corresponded to his last name. Upon this information and belief, the only match in 2019 to Plaintiff's name was a match to his last name.

32. For these reasons, Clarity relied on software designed to match a consumer to the SDN List by reference only to that consumer's last name. Thus, Clarity violated Section 1681i(a)(4) when it failed to consider all the relevant information Plaintiff provided in his dispute letter, including his first and middle name as additional filters, along with other identifiers that OFAC considers relevant to its Sanctions List Search functions, including a person's identification numbers (Plaintiff included a copy of his Nevada driver's license and his Social Security Card) and address (Plaintiff identified his address on his dispute letter and Nevada driver's license).

33. If Clarity does use a third-party to furnish it with data Clarity relies on when identifying an OFAC Alert, then, upon information and belief, Clarity failed to notify that furnisher of Plaintiff's dispute, thus violating Section 1681i(a)(2).

34. In sum, Clarity violated its duty under Section 1681i(a)(1)-(6) to reasonably reinvestigate Plaintiff's dispute, thus resulting in the patently inaccurate rereporting of Plaintiff as a match to the OFAC SDN List.

35. Because, Clarity maintains policies and procedures not designed to cross-reference data in addition to a "name only" matching program, Clarity has failed to maintain policies and procedures reasonably designed to assure maximum possible accuracy of the information it publishes on its OFAC Alert products. In turn, this is a violation of Section 1681e(b) because this is information that would appear on the face of a consumer report to third parties.

36. Clarity's reporting of the OFAC Alter for Plaintiff was willful.  Clarity was on notice that its process for "name only" matches was unreasonable in light of the Third Circuit's decision *Cortez v. Trans Union*, LLC, 617 F.3d 688, 709-10 (3d Cir. 2010) where the court affirmed a jury's finding that "name only" matches was unreasonable, and recklessly so. *See also Ramirez v. TransUnion LLC*, No. 17-17244, 2020 WL 946973, at *5 (9th Cir. Feb. 27, 2020).  Accordingly, Plaintiff is eligible for statutory damages.

37. Also as a result of Clarity's continued reporting of the OFAC alert and failing to disclose the sources of its reporting, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses in the form of transportation and lost time in challenging Defendant's wrongful reporting.  Plaintiff's creditworthiness, including his credit score,

has also been damaged by this inaccurate reporting. Plaintiff's credit reporting issues have also caused him to suffer increased emotional distress. Plaintiff has also been placed in fear of credit denials due to this misreporting.

38. Plaintiff has been required to retain counsel to prosecute this action based on Clarity's defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs.

## FIRST CAUSE OF ACTION
## AGAINST DEFENDANT
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681 *ET SEQ.* (FCRA)

39. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

40. The foregoing acts and omissions related to Defendant constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

41. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendant.

42. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant them the following relief against Defendant:

**FIRST CAUSE OF ACTION
AGAINST DEFENDANT
VIOLATION OF THE FAIR CREDIT REPORTING ACT
15 U.S.C. § 1681 *ET SEQ*. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- an award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: May 14, 2020

Respectfully submitted,

*/s/ David H. Krieger, Esq.*
David H. Krieger, Esq.
KRIEGER LAW GROUP LLC
500 N. Rainbow Blvd., Suite 300
Las Vegas, NV 89107

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700

Attorneys for Plaintiff

11