# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Hugo Barragan, et al.,

    Plaintiffs

v.

Clarity Services, Inc.,

    Defendant

Case No.: 2:20-cv-00876-JAD-DJA

**Order Granting in Part Motion to Dismiss, Denying Rule 11 Sanctions, and Transferring Action Back to Original Judge**

[ECF Nos. 23, 31, 34, 48]

    Plaintiffs Hugo Barragan, Monica Lecter, Laura Marscheck, Alfredo Salazar, and Nora Salazar sue consumer reporting agency Clarity Services, Inc., alleging that Clarity's handling of their requests to delete its records reflecting that their names match those on the United States Department of the Treasury's Office of Foreign Assets Control's list of Specially Designated Nationals violated three provisions of the Fair Credit Reporting Act (FCRA).[1]  Clarity moves under Rule 12(b)(6) to dismiss the entirety of this action, describing it as "a lawsuit in search of a legal theory" and "a misguided attempt to capitalize on the Ninth Circuit's recent decision in *Ramirez v. Trans Union*."[2]  Because the plaintiffs have alleged sufficient facts to clear the Rule 12(b)(6) hurdle on their reasonable-reinvestigation (§ 1681i(a)) claim, I deny the motion as to that claim, but I grant it as to the source-identification (§ 1681g(a)(2)) claim because plaintiffs have pled themselves out of that theory and as to the inaccuracy (§ 1681e(b)) claim because they have not pled a consumer report.  Clarity also asks for sanctions under Rule 11 based on its claimed falsity of the plaintiffs' case theory and moves to transfer this case back to the first judge it was assigned to before plaintiffs' counsel dismissed then refiled, drawing a new judge.

---

[1] 15 U.S.C. § 1681 et seq.

[2] ECF No. 23 at 2 (citing *Ramirez v. TransUnion*, 951 F.3d 1008 (9th Cir. 2020)).

Although I do not find that Rule 11 sanctions are warranted because the plaintiffs have identified facts and the investigative steps that support their allegations, I grant the motion to transfer because the maneuvering that landed all of the plaintiffs' claims with me strongly suggests improper judge shopping.

**Background**

Clarity is a consumer reporting agency (CRA) as defined by the FCRA.[3]  In 2019, each of the plaintiffs sent a form letter to Clarity, requesting a free copy of the consumer credit report that Clarity prepared about them.[4]  Clarity provided each requesting plaintiff a "response to consumer request" that showed, among other things, an "OFAC Score" with a correlating number and "OFAC Flag" with either a "true" or "false" designation.[5]  These OFAC disclosures indicate that the plaintiffs are "a match to a name appearing on the list of Specially Designated Nationals ('SDNs') appearing on the United States Department of the Treasury's Office of Foreign Assets Control ('OFAC')."[6]  "Individuals appearing on the OFAC SDN list are prohibited from transacting business in the United States for national security reasons."[7]  They include "individuals, groups, and entities, such as terrorist and narcotics traffickers. . . ."[8]  Clarity's OFAC scores range from 0–100, and as Clarity's "How to Read Your Clarity Report"

---

[3] ECF No. 18 (first amended complaint) at ¶ 5.  These details are taken from the allegations in the first amended complaint and the documents identified therein; they are merely a summary of the factual allegations pled by the plaintiffs and not intended as findings of fact.

[4] *Id*. at ¶¶ 15–19.

[5] *Id. at* ¶¶ 21–22; ECF No. 23-1 at 13, 55, 93, 126, 165 (reports).

[6] ECF No. 18 at ¶ 15–19; *see also* ECF No. 23-1 at 171 (Validation Section instruction # 70, explaining that this section indicates a "[l]ikelihood that your information matches the list(s)").

[7] ECF No. 18 at 23 (quoting *Ramirez*, 951 F.3d at 1016).

[8] ECF No. 34 at 2, n.1 (quoting Specifically Designated Nationals and Blocked Persons List, available at https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-nationals-and-blocked-persons-list-sdn-human-readable-lists, last visited March 26, 2021).

instructions indicate, a "lower [score] is better."[9]  The plaintiffs' scores ranged from 26–60, and all plaintiffs' reports reflected a "false" OFAC flag designation except Mr. Salazar, whose disclosure showed a "true" flag.[10]

After receiving their reports, the plaintiffs each sent Clarity a (mostly form) letter "to inform [Clarity] of inaccurate information in [their] consumer file[s] . . . ."[11]  Each cited his or her OFAC score, noted his or her understanding that "this score can relate to a terrorist watch list . . . and I have done nothing I am aware of to deserve to have a score other than 0 associated with me or in my consumer file with your company," and described this information as "very unclear and therefore misleading."[12]  Each also asked for "a description of how/where [Clarity] obtained this score and why I am score [sic] of greater than 0, since I dispute that I should have any score indicating I am on an OFAC watch-list."[13]  They asked Clarity to "note this information as 'disputed' regarding the accuracy and completeness of this information" and to tell any party to whom Clarity furnishes the information that it is disputed, and they "request[ed] a more thorough explanation of what this means, why its [sic] accurate[,] and why it's in my file."[14]

Clarity responded to these dispute letters that its "reinvestigation is complete" and that the OFAC information "has been confirmed as accurate and complete and will remain" in the plaintiffs' files.[15]  It also sent letters to the plaintiffs advising them that the OFAC information is

---

[9] *Id.* at 22; *see also* ECF No. 23-1 at 171 (Validation Section instruction # 70).

[10] *Id.* at ¶ 21; ECF No. 23-1 at 13, 55, 93, 126, 165 (reports).

[11] *See* ECF No. 18 at ¶ 37; ECF No. 23-1 at 37, 79, 115, 151, 183 (dispute letters).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] ECF No. 18 at ¶ 39; *see also, e.g.*, ECF No. 23-1 at 40–41.

controlled by the OFAC and explaining that "[i]f a consumers [sic] name appears on the [SDN] list inaccurately it will show on their Clarity Report along with an OFAC score."[16]  It further explained that their "name . . matches a name on" the SDN list and provided instructions for viewing the SDN list and requesting to be removed from it.[17]

However, as the plaintiffs detail in their first amended complaint, when they followed those instructions for viewing the SDN list, the plaintiffs were unable to find themselves on it.[18] This led them to the conclusion that Clarity must have "relied on a matching algorithm designed to match a consumer to the SDN List by reference only to that consumer's last name" and failed to consider "all the relevant information each [p]laintiff provided in their respective dispute letters" like "their first and middle names" and other personal identifiers like driver's licenses, Social Security numbers, and addresses.[19]  And the plaintiffs assert that the Third Circuit in 2010 in *Cortez v. TransUnion*, followed by the Ninth Circuit in *Ramirez* in 2020, recognized that name-only searches to produce OFAC matches are objectively unreasonable.[20]

Plaintiff Barragan filed this action first on May 4, 2020, but dismissed it under FRCP 41(a)(1)(A)(i) that same day.[21]  That initial action was randomly assigned to United States District Judge James C. Mahan.  Barragan refiled the identical complaint ten days later, and this new action randomly landed with the undersigned Judge Jennifer A. Dorsey.  Plaintiffs' counsel then filed separate actions on behalf of the Salazars, which were randomly assigned to Judges

---

[16] *See, e.g.*, ECF No. 23-1 at 41.

[17] *Id.*; *see also* ECF No. 18 at ¶¶ 39–41.

[18] ECF No. 18 at ¶¶41–44.

[19] *Id.* at ¶¶ 46–48.

[20] *Id.* at ¶ 51 (citing *Cortez v. TransUnion, LLC*, 617 F.3d 688, 709–10 (3d Cir. 2010), and *Ramirez*, 951 F.3d at 1031).

[21] *Barragan v. Clarity Services, Inc.*, Case No. 2:20-cv-00796-JCM-DJA.

Kent J. Dawson and Andrew P. Gordon,[22] but plaintiffs' counsel dismissed those actions and joined the Salazars' claims into this case—along with new claims by the Lecter and Marscheck plaintiffs—in Barragan's July 28, 2020, first amended complaint.[23]   That pleading contains claims alleging violations of three separate provisions of the FCRA: (1) a failure-to-disclose-source-information claim under § 1681g(a)(2); (2) a failure-to-conduct-a-reasonable-reinvestigation claim under § 1681i(a); and (3) a failure-to-follow-reasonable-procedures-to-ensure-maximum-accuracy claim under § 1681e(b).[24]

Clarity moves to dismiss all of the plaintiffs' claims as insufficient under FRCP 12(b)(6), and the plaintiffs oppose that motion.[25]   On top of that, Clarity adds two motions seeking sanctions for alleged attorney misconduct.   First, Clarity alleges that plaintiffs' counsel's filings-followed-by-prompt-dismissals are evidence of improper judge shopping, and Clarity asks that this case be transferred back to Judge Mahan where it began.[26]   Second, it seeks Rule 11 sanctions for what it claims is the false allegation that Clarity conducts a name-only search of the OFAC information.   Plaintiffs oppose both motions.[27]   Because the motion to dismiss was filed first, I begin with it.

---

[22] *Alfredo Salazar v. Clarity Services, Inc.*, Case No. 2:20-cv-1028-KJD-VCF; *Nora Salazar v. Clarity Services, Inc.*, Case No. 2:20-cv-1035-APG-BNW.

[23] ECF No. 18.

[24] *Id.*

[25] ECF Nos. 23 (motion to dismiss), 26 (plaintiffs' opposition).

[26] ECF Nos. 31 (motion to transfer), 34 (Rule 11 motion).

[27] ECF Nos. 32, 36 (plaintiffs' oppositions to sanctions motions).

**Discussion**

**I.      Clarity's motion to dismiss [ECF No. 23]**

      **A.      A Rule 12(b)(6) motion tests the factual allegations of the complaint for plausibility.**

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[28]  While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[29]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[30]  In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[31]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss.  The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[32]  Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[33]  The court must then consider whether the well-pled factual allegations state a

---

[28] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[29] *Twombly*, 550 U.S. at 570.

[30] *Iqbal*, 556 U.S. at 678.

[31] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[32] *Iqbal*, 556 U.S. at 678–79.

[33] *Id.*

plausible claim for relief.[34]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[35]  Although the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice" when deciding a 12(b)(6) motion, the court may consider "a writing referenced in the complaint but not explicitly incorporated therein" if a claim relies on the document and nobody disputes its authenticity.[36]

### B. Plaintiffs have sufficiently alleged an unreasonable-reinvestigation claim, but their remaining claims fail on these facts.

#### 1. The plaintiffs have not sufficiently pled a 1681e(b) inaccurate-consumer-report claim.

In their third cause of action, the plaintiffs allege that Clarity's use of a name-only matching program to collect and report OFAC data about consumers violates 15 U.S.C. § 1681e(b).  This section of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."[37] "Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information."[38]  To state a claim under this provision, plaintiffs must plead facts tending to show that Clarity prepared a credit report on them that contains

---

[34] *Id.* at 679.

[35] *Id.*

[36] *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[37] 15 U.S.C. § 1681e(b).

[38] *Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (collecting cases).

inaccurate information.[39]  An item of information is inaccurate for the FCRA's purposes if "it is either patently incorrect or is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."[40]  Clarity argues that this claim fails for two reasons: (1) the plaintiffs have not alleged an inaccuracy and (2) even if they could, that inaccuracy wasn't in a consumer report as the statute requires.

### a.    Plaintiffs have alleged an inaccuracy.

Clarity contends that the plaintiffs have not plausibly alleged an inaccuracy, rather they "only . . . vaguely assert[] that they 'disputed the accuracy of Clarity's OFAC Score reporting."[41] But that characterization grossly understates the express factual allegations in the complaint and the plaintiffs' individual letters.  Plaintiffs allege in paragraph 37 that "[i]n their respective letters, [they] stated plainly that they should have OFAC Scores no greater than zero, and requested that Clarity delete any OFAC reporting, other than to indicate that the OFAC Score was '0.'"[42]  Those letters—which Clarity attaches to its motion and urges me to consider because they are referenced in the complaint—show that all of the plaintiffs disputed Clarity's OFAC information as inaccurate, stating that they were writing Clarity "to inform [it] of inaccurate information in [their] consumer file with your company" and thoroughly explaining that any OFAC score other than zero is "incorrect and inaccurate" because these consumers "have done nothing" of which they are "aware to deserve to have a score other than 0 . . . ."[43]  So the

---

[39] *Id.*

[40] *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (internal quotation omitted) (collecting cases).

[41] ECF No. 23 at 7–8 (citing ECF No. 18 at ¶ 37).

[42] ECF No. 18 at ¶ 37.

[43] ECF No. 23-1 at 37.

1   plaintiffs specifically identified the alleged inaccuracies in their dispute letters to Clarity, as they

2   correctly state in the first amended complaint.  These allegations are sufficient to state an

3   inaccuracy under the statute.

4         Clarity's true dispute is not with whether or not the plaintiffs alleged an inaccuracy but

5   whether they're right about this information being inaccurate.  The plaintiffs allege that any

6   score above zero and any "true" flag suggests that they are "a match to a name appearing on" the

7   SDN list, and none of them is on such a list.[44]  Clarity argues that such scores and flags do not

8   indicate that these consumers are, in fact, on the SDN list, so there is no inaccuracy.  Clarity's

9   semantics are not persuasive because it is enough at this procedural stage that its disclosures

10   indicated a likelihood of a match.  The Ninth Circuit in *Ramirez* found that TransUnion's letters

11   advising Ramirez that his name was "considered a potential match to information" on the SDN

12   list contained a "severe" inaccuracy: "that [he was] considered [a] potential SDN[]," a "practice

13   [that] ran a real risk of causing the uncertainty and stress that Congress aimed to prevent in

14   enacting the FCRA."[45]  As Clarity's own How to Read Your Clarity Report shows and the

15   plaintiffs allege, the higher the OFAC score, the greater the "[l]ikelihood that [a consumer's]

16   information matches" the SDN list,[46] so any score other than zero shows some likelihood of a

---

[44] ECF No. 18 at 15–19.

[45] *Ramirez*, 951 F.3d at 1026.  I recognize, as Clarity notes in its motion for leave to supplement its dismissal motion, ECF No. 48, that the United States Supreme Court has granted certiorari in *Ramirez*.  Although the ultimate decision on that appeal "may reverse the Ninth Circuit on the issue of standing," *id*. at 3, for now, *Ramirez* stands and remains binding on this court.  *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) ("once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority," unless a Supreme Court Justice stays the issuance of the mandate).  So I deny the motion for leave to supplement because the grant of certiorari in *Ramirez* does not diminish its present force.

[46] *See, e.g.,* ECF No. 23-1 at 19 (Validation Section # 70).

name match.  Because the plaintiffs allege that there should be no such likelihood based on the

information that Clarity claims these scores are derived from, they have sufficiently pled an

inaccuracy to surmount this 12(b)(6) challenge.

        **b.**        ***Plaintiffs have not sufficiently alleged a consumer report.***

Clarity next attacks the plaintiffs' § 1681e(b) claim by arguing that it fails because the

alleged inaccuracy was merely in to-the-consumer disclosures and not in a "consumer report."[47]

The term "consumer report," Clarity contends, refers to a document "furnished . . . to a third

party 'for the purpose of servicing as a factor in establishing the consumer's eligibility for' a

qualifying purpose."[48]  The plaintiffs respond that *Ramirez* controverts this third-party disclosure

requirement because it recognizes that harm flows from the mere availability of false watch-list

information being available to potential creditors.[49]  In their first amended complaint, the

plaintiffs allege that Clarity's OFAC information on them violates Section 1681e(b) "because

this is information that would appear on the face of a consumer report to third parties."[50]

Whether or not the statute requires a third-party disclosure, a § 1681e(b) plaintiff must

still plead facts that show that the disclosures at issue are written communications of information

bearing on the consumer's creditworthiness that was at least collected in part for the purpose of

serving as a factor in establishing the consumer's eligibility for credit.[51]  And here, the plaintiffs

have not done so because they offer only the conclusory statement that this information would so

---

[47] ECF No. 23 at 10.

[48] *Id*. at 11 (quoting 15 U.S.C. § 1681e(b)).

[49] ECF No. 26 at 13.

[50] ECF No. 18 at ¶ 55.

[51] *See* 15 U.S.C. § 1681a(d)(1)(A).

appear.[52]  Their reliance on *Ramirez* does not fill this gap.  The *Ramirez* court was not asked to

grapple with the issue here of whether the OFAC information given to the consumers constituted

a consumer report.  And in *Ramirez*, the false OFAC alerts for 1,853 consumers "were

disseminated to potential creditors,"[53] demonstrating that TransUnion in fact collected and

disseminated such information to third parties for credit-eligibility determinations.  Plaintiffs

have neither pled nor pointed to any similar facts here.  Because I cannot conclude at this time

that the plaintiffs could plead such information, I do not grant leave to amend.  But I dismiss this

claim without prejudice to the plaintiffs' ability to file a properly supported motion for leave to

amend in compliance with Local Rule 15-1.

### 2.   The plaintiffs have sufficiently pled a 1681i(a) unreasonable-reinvestigation claim.

15 U.S.C. § 1681i(a)(1)(A) provides that "[i]f the completeness or accuracy of any item

of information contained in a consumer's file at the consumer reporting agency is disputed by the

consumer and the consumer notifies the agency directly . . . of such dispute," the agency must

"conduct a reasonable reinvestigation to determine whether the disputed information is

inaccurate" and record the information's current status or delete it from the file.  In their second

cause of action, the plaintiffs claim that Clarity violated § 1681i(a)(1)(A) in its reinvestigation of

their disputes.  Clarity argues that this claim fails for the lack of an allegation of inaccuracy—

which I've disposed of above and will not repeat—and because "they offer only a bare

conclusory allegation that Clarity's reinvestigation was unreasonable."[54]

---

[52] ECF No. 18 at ¶ 55.

[53] *Ramirez*, 951 F.3d at 1027.

[54] ECF No. 23 at 9.

Again, Clarity understates the factual depth of the plaintiffs' allegations in its characterization. In the first amended complaint, the plaintiffs detail their efforts to verify the OFAC scores that Clarity ascribed to them by searching the website that Clarity directed them to.[55] They explain that they "included copies of their Nevada driver's licenses, Social Security Cards, and addresses" to assist Clarity in its reinvestigation.[56] But, based on their testing of the OFAC search functions, it appears to the plaintiffs that Clarity disregarded "all the relevant information" that they provided in their dispute letters, "including their first and middle names as additional filters, along with other identifiers that OFAC considers relevant to its Sanctions List Search functions, including a person's identification numbers," and their addresses, and thus apparently relied on a name-only match to maintain the original OFAC scores and flags on reinvestigation.[57] Whether discovery will ultimately confirm the accuracy of these factual allegations and theories remains to be seen. But that's not the 12(b)(6) question. And, in light of the *Ramirez* court's recognition that "a reasonable jury could conclude that" "failing to use an additional identifier such as date of birth to verify the accuracy of OFAC matches" is "objectively unreasonable,"[58] I find that the plaintiffs have sufficiently alleged that Clarity's reinvestigation of their disputes was unreasonable, surviving this challenge.

### 3.    *Plaintiffs have not pled a § 1681g(a)(2) source-identification claim.*

Finally, as plaintiffs concede by their silence in response to Clarity's dismissal arguments on their first cause of action, their own allegations preclude a § 1681g(a)(2) source-investigation claim. Section 1681g(a)(2) provides that every consumer reporting agency must, upon the

---

[55] ECF No. 18 at ¶¶43–45.

[56] *Id*. at ¶ 48.

[57] ECF No. 18 at ¶¶ 39–50.

[58] *Ramirez*, 951 F.3d at 1031–32 (citing *Cortez*, 617 F.3d at 723).

consumer's request and with limited exceptions that are not relevant here, "clearly and accurately disclose to the consumer" "[t]he sources of the information" that is contained in their consumer's file.  The plaintiffs contend that Clarity violated § 1681g(a)(2) by failing "to identify the source of [its] reporting" related to the OFAC score and flags.[59]  But, as Clarity points out in its motion, the factual allegations in the complaint and the correspondence underlying these claims show that Clarity did inform the plaintiffs that its "score and flag results were derived" from OFAC information[60] and also that Clarity identified the government website where that "list may be viewed" and the process and address for requesting removal from the list.[61]  So plaintiffs cannot sustain a § 1681g(a)(2) claim on these facts, and I therefore dismiss their first cause of action without leave to amend.

## II.   Clarity's motion for Rule 11 sanctions [ECF No. 34]

Clarity's insistence that its OFAC reporting is not based on a name-only search is not just one of its arguments for dismissal, Clarity also moves the court to sanction the plaintiffs for the bald falsity of their case theory.[62]  Clarity argues that its methods for searching the OFAC SDN list are "published" on "the code-hosting platform Github.com," a site known in computer-programmer circles as "Facebook for coders."[63]  That site describes "in detail how the name, address, and city factors are searched and weighted to calculate a final score" and has done so since 2014.[64]  Clarity avers that the plaintiffs' claim that Clarity's method is a name-only search

---

[59] ECF No. 18 at ¶ 27.

[60] *Id*. at ¶ 26.

[61] *See, e.g.*, ECF No. 23-1 at 187 (Clarity reinvestigation response letter to Marscheck).

[62] ECF No. 34 at 2.

[63] *Id*. at 3.

[64] *Id*.

is false in light of its Github.com disclosures—so false that this court must strike such "false allegations from the" first amended complaint "and the opposition brief, award[] Clarity its fees for" its Rule 11 motion, and grant all available Rule 11 relief.[65]

Rule 11 sanctions are "an extraordinary remedy, one to be exercised with extreme caution."[66]  Rule 11 allows the court to sanction a party or an attorney for filings made on allegations or other factual contentions that have no "evidentiary support or . . . will [not] likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"[67]  "If, judged by an objective standard, a reasonable basis for the position exists in . . . fact at the time that the position is adopted, then sanctions should not be imposed."[68]

In many ways, Clarity's basis for this sanctions motion is unsound for the same reason that its motion to dismiss for lack of an inaccuracy is.[69]  In their first amended complaint and opposition to the motion to dismiss, the plaintiffs described the investigations they conducted that led them to the belief that Clarity is employing a name-only search to generate its OFAC scores and flags.[70]  Those allegations contain specific, factual detail explaining how the plaintiffs searched the website that Clarity itself directed them to, what information they input into that search, what the results were, and why those results are inconsistent with Clarity's assertion that it uses more than a name-only algorithm.  By an objective standard, those allegations provide a reasonable basis for the plaintiffs' position.

---

[65] Clarity sent the required safe-harbor letter to plaintiffs' counsel.  ECF No. 34-1 at 4–5, ¶ 8.

[66] *Operating Eng'r Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

[67] Fed. R. Civ. P. 11(b)(3).

[68] *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986).

[69] *See supra* at pages 8–9.

[70] *See* ECF No. 18 at ¶¶ 41–46; ECF No. 26 at 6–10.

Clarity's argument that its "method and code for searching the OFAC SDN list" has been publicly available since 2014 and reveals "how the name, address, and city factors are searched and weighted to calculate a final score" oversimplifies this information—and its availability—to the point of misconstruction.  Clarity has not demonstrated that the consumer plaintiffs and their attorneys should have been aware of information on the GitHub website that touts itself as "Built for [web] developers" "to host and review code, manage projects, and build software together."[71] But even if I could conclude that counsel had a pre-filing duty under Rule 11 to consult this obscure platform, the information it contains does not belie unequivocally plaintiffs' theory that Clarity's OFAC reporting is based on a name-only search.  As the plaintiffs point out, the GitHub summary contains these statements:

- "The score is calculated by adding up the weightings of each part that is matched. So if only name is matched, then the max score is the weight for: name which is 60";[72]

- "If there is no city or address info in the database, then your final score will be 60";[73] and

- "We consider a score of 60 to be reasonable as a hit."[74]

The plain language of this information suggests that a mere matching name generates a score of 60, which Clarity "consider[s] . . . to be reasonable as a hit."[75]  So, instead of demonstrating its

---

[71] ECF No. 34-1 at 10 (gateway page for GitHub, attached to Clarity's motion), 21.

[72] *Id.* at 22.

[73] *Id.* at 23.

[74] *Id.*

[75] *Id.*

1   falsity, this language is consistent with plaintiffs' theory.[76]  Because Clarity has not shown that

2   the plaintiffs' filings have no "evidentiary support or . . . will [not] likely have evidentiary

3   support after a reasonable opportunity for further investigation or discovery,"[77] the extraordinary

4   remedy of Rule 11 sanctions is not warranted.

5   **III.    Clarity's motion to transfer this action back to Judge Mahan [ECF No. 31]**

6          Finally, I address Clarity's motion to transfer this action back to U.S. District Judge

7   Mahan, the judge that Barragan drew when he first filed this case.  Clarity contends that

8   dismissing the Barragan case immediately upon drawing Judge Mahan, then refiling the very

9   same complaint just days later, followed by two additional actions—one for each of the

10  Salazars—(which landed with District Judges Dawson and Gordon) and then dismissing those

11  suits and adding the Salazars as plaintiffs in this case, demonstrates that plaintiffs' counsel

12  manipulated the random-assignment system to ensure that these name-match-only OFAC claims

13  against Clarity would proceed before me.  Clarity labels this "a bold judge-shopping maneuver"

14  and theorizes that plaintiffs' counsel, who has filed legions of FCRA lawsuits, "sought to avoid

15  judges" who have "handed [them] a string of defeats, often criticizing counsel's theories and

16  drafting. . . ."[78]  When Clarity's counsel asked plaintiff's counsel Matthew Knepper, Esq. why

17  the initial Barragan action was voluntarily dismissed and then immediately refiled, he "declined

18

19  [76] The court wants to make clear that this information is only being evaluated in the context of a
20  Rule 11 violation and is in no way intended to validate the merits of the plaintiffs' claims.

    [77] Fed. R. Civ. P. 11(b)(3).

21  [78] ECF No. 33 at 5–6 (collecting cases).  As this case proceeds, both sides are cautioned that they
22  would be well-served by reducing the temperature of their filings.  Counsel for plaintiffs and
    counsel for Clarity have battled in scores of these FCRA cases in this district, and their filings
23  consistently betray a personal and professional animosity for one another.  The hyperbole,
    editorialized arguments, and vitriolic tone of their respective submissions are not persuasive or
    appreciated, and they only serve to cloud all counsel's assessment of the merits of their positions.

to provide an explanation. . . ."[79]  The notice of voluntary dismissal was filed by David

Krieger,[80] Esq., who was Mr. Knepper's co-counsel in the original Barragan filing and remains

so in this one.  Mr. Knepper declares that he "was not familiar with the reason for the prior

dismissal, but after further investigation, [he] was satisfied that Rule 41 provided a sufficient

legal basis for dismissal."[81]  He further declares that he "was also unfamiliar with this court's

random assignment mechanism. . . ."[82]  He declined Clarity's counsel's request to stipulate to

transfer this case back to Judge Mahan "because 'We like this judge.'"[83]

Rule 41(a)(1)(A) generously allows a plaintiff to voluntarily dismiss an action without

the court's approval for any reason[84]—except to abuse the judicial process.  As the Ninth Circuit

recognized in *Hernandez v. City of El Monte*, "[j]udge-shopping clearly constitutes 'conduct

which abuses that judicial process.'"[85]  And "attempts to manipulate the random case assignment

process are subject to universal condemnation."[86]  "The district court's inherent power to impose

dismissal or other appropriate sanctions" includes the authority to curb and sanction judge-

shopping[87] "to preserve the integrity and control of its docket."[88]

---

[79] ECF No. 31-1 at ¶ 6 (Braster decl.).

[80] *See Barragan v. Clarity*, 2:20-cv-00796-JCM-DJA at ECF No. 4.

[81] ECF No. 32-1 at ¶ 4 (Knepper decl.).

[82] *Id.*

[83] ECF No. 33-1 at ¶ 9(b) (O'Connor decl.).

[84] Fed. R. Civ. P. 41(a)(1).

[85] *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)).

[86] *Disability Advocates & Counseling Grp, Inc. v. Betancourt*, 379 F. Supp. 2d 1343, 1364 (S.D. Fla. 2005) (collecting authority).

[87] *Hernandez*, 138 F.3d at 399.

[88] *Murray v. Sevier*, 1992 WL 75212 at *1 (D. Kan. Mar. 13, 1992).

The timing of events and the lack of justification strongly suggest that the plaintiffs engaged in judge shopping, which cannot be tolerated.  As the D.C. Circuit Court observed in *National Treasury Employees Union v. Internal Revenue Service*, "[t]he semblance of judge shopping in the first instance is . . . a concern when a litigant discontinues a fray only to start over again on another day."[89]  That appears to be what happened here.  Plaintiffs have offered no good reason for this action.  Mr. Knepper's reliance on Rule 41 for his rationalization rings hollow because the rule supplies only a mechanism—not a justification—for dismissal.  Worse, the silence by Mr. Krieger, who signed the voluntary dismissal notice and whose motives for doing so are being impugned here, speaks volumes.  I also find it implausible that Mr. Knepper lacks awareness of this district's random-assignment process for cases because he previously served as a judicial law clerk to two district judges in this very district.

Courts have sent cases back to their originally assigned judges based on similar indicia of judge shopping.  For example, the district court in *Emerson v. Toyota Motor North America, Inc.* transferred an improperly refiled action back to the original court because it was "troubled by the appearance of judge-shopping."[90]  There, the plaintiff filed her action in the Central District of California but dismissed it the following day after the judge was assigned.[91]  The next week, she refiled it in the Northern District, and the defendant moved to transfer it back.[92]  The court granted the motion because the maneuver created the appearance of impropriety and the plaintiff offered no explanation for it:

---

[89] *Nat'l Treasury Emp. Union v. Internal Revenue Serv.*, 765 F.2d 1174, 1177 n.5 (D.C. Cir. 1985).

[90] *Emerson v. Toyota Motor N. Am., Inc.*, 2014 WL 6985183, *4 (N.D. Cal. Dec. 9, 2014).

[91] *Id.* at *1.

[92] *Id.*

> Plaintiff's conduct suggests that Plaintiff may have filed in this District believing they would receive a more favorable judicial assignment than the one they had just received in the Central District.  The Court cannot conceive of another reason why Plaintiff would dismiss the Central District action following the judicial assignment and then immediately re-file the complaint in this District, and Plaintiff has not provided one in its briefing.[93]

Similarly, in *Alvarado v. Bank of America*, the court found that dismissal followed by refiling of a suit after the judge recused and the case was reassigned to new judge was "adequate evidence to support the inference that plaintiffs engaged in improper judge-shopping," and transferred the case back.[94]  And in *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, the court transferred an action back to the original judge after the plaintiff dismissed and refiled it "in hopes that the random assigning process would result in a more favorable judge."[95]

Compounding the unexplained dismissal and refiling of Barragan's complaint as hallmarks of judge shopping here is the plaintiffs' failure to follow this court's local rules for managing related or similar cases.  Although Local Rule 42-1(a) requires parties to file a notice of related cases when "an action on file or about to be filed is related to another action on file (whether active *or terminated*)," and the rule states that actions are "related" when "(1) [b]oth actions involve the same parties and are based on the same or similar claim,"[96] as both of the Barragan filings certainly do and are, plaintiffs' counsel filed no such notice.  Filing two independent actions for the Salazars, only to dismiss them and join the Salazars as plaintiffs in this case, again without filing notices of related cases or employing this court's consolidation

---

[93] *Id*. at *3.

[94] *Alvarado v. Bank of Am.*, 2009 WL 720875, *3–*4 (E.D. Cal. Mar. 17, 2009).

[95] *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp. 2d 69, 73 (D. P. R. 2004).

[96] L.R. 42-1(a) (emphasis added).

procedures under Local Rule 42(b),[97] bespeaks further docket manipulation.  Plaintiffs' counsel's refusal to stipulate to transfer this case back to Judge Mahan when confronted with the judge-shopping concern on the justification that "[w]e like this judge" further suggests that the dismissal was done for improper purposes.

In sum, this court cannot ignore the red flags of judge shopping that resulted in three separate actions before Judges Mahan, Gordon, and Dawson now proceeding before me.  To curb future abuses and mitigate any benefit that may have been achieved by this outwardly improper maneuvering, I grant Clarity's motion and transfer this case back to Judge Mahan where it began.[98]

### Conclusion

IT IS THEREFORE ORDERED that:

- **Clarity's Motion to Dismiss Amended Complaint [ECF No. 23] is GRANTED in part and DENIED in part: Plaintiffs' First Cause of Action (the source-identification claim under § 1681g(a)(2)) and Third Cause of Action (inaccurate consumer report claim under § 1681e(b)) are dismissed without prejudice but also without leave to amend; the Second Cause of Action may proceed**;

- Clarity's Motion for Leave to File Supplemental Authority **[ECF No. 48] is DENIED**;

---

[97] Local Rule 42(b) allows the court to decide whether to join or consolidate actions involving a common question of law or fact.

[98] Though Clarity asks that I transfer this case to Judge Mahan and allow him to decide the other pending motions, I dispose of Clarity's other pending motions before transferring this case because Clarity filed its dismissal action before moving for transfer, and its Rule 11 and request to supplement are inextricably intertwined with the dismissal issues.

- Clarity's Rule 11 Motion for Sanctions **[ECF No. 34] is DENIED**; and

- Clarity's Motion to Transfer **[ECF No. 31] is GRANTED.** The Clerk of Court is directed to **TRANSFER this action back to United States District Judge James C. Mahan**, who was first assigned this case in Case No. 2:20-cv-00796-JCM-DJA before it was dismissed and refiled.

_____

U.S. District Judge Jennifer A. Dorsey
Dated: March 31, 2021